# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

V. C. ("CHUCK") DAWSON and
PATRICIA DAWSON, husband and wife,

      Plaintiffs,

    vs.                                                                                                                                                                           No. CIV 99-0794 JC/DJS

SOUTHWEST MULTIPLE LISTING SERVICE, INC.,
a New Mexico corporation; ALBUQUERQUE BOARD OF
REALTORS®, a New Mexico not-for-profit corporation;
PETER PARNEGG, individually and as director of SWMLS,
LAURIE KISSAM, individually and as director of SWMLS,
WILLIAM HALLETT, individually and as director of
SWMLS, JOHN WHITNEY, individually and as an employee
of SWMLS; NELSON B. JANES, individually and as an employee
of ALBUQUERQUE BOARD OF REALTORS® and
JOHN and JANE DOES NOS. 1 THROUGH 25, individually,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendants' Motion to Dismiss or Stay Pending Arbitration, filed September 23, 1999 *(Doc. 20)*, and Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction, filed September 2, 1999 *(Doc. 15)*. The Court has reviewed the motions, the memoranda submitted by the parties, and the relevant authorities.

    The Court finds that Defendants' Motion to Dismiss or Stay Pending Arbitration is well taken and will be granted. Therefore, Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction will be stayed pending arbitration.

I.  **Background**

This case concerns real estate practice in the ever advancing technological world. Plaintiffs Chuck and Patricia Dawson have created an Internet site on the World Wide Web. On this site, the Dawsons conduct their real estate practice. Plaintiffs post listings for homes taken from the Southwest Multiple Listing Service (SWMLS). SWMLS and the other defendants claim that the Dawsons are posting listings in violation of SWMLS Rules and Regulations and in violation of the rules of other real estate organizations to which the Dawsons belong. The Dawsons have sued SWMLS, the Albuquerque Metro Board of Realtors (AMBR), and various directors and employees of those organizations seeking a declaratory judgment that their practices are acceptable. Plaintiffs also seek damages for violations of federal and state antitrust laws and for New Mexico common law tort.

Defendants bring this Motion to Dismiss or Stay Pending Arbitration claiming that Plaintiffs' lawsuit is directly contrary to the arbitration clauses found in the membership agreements between the Dawsons and SWMLS and the Dawsons and AMBR. Defendants claim that the case is subject to mandatory arbitration under the Federal Arbitration Act and that the Court should refrain from granting an injunction at this time.

II.  **Analysis**

The Federal Arbitration Act ("FAA") provides that in a transaction involving commerce, contractual provisions to arbitrate are valid, irrevocable and enforceable. *See* 9 U.S.C.§ 2. For the Federal Arbitration Act to apply to a dispute between parties, the court must make two

findings: (1) there was an agreement in writing providing for arbitration; and (2) the contract evidenced a transaction involving interstate commerce. *See Id.*

Plaintiffs' verified complaint indicates that the Internet, the subject of this dispute, is "an instrument of interstate commerce." Plaintiffs' Verified Complaint *(Doc. 1)* at 8. Plaintiffs also indicate that the client pool for both Plaintiffs and Defendants is not limited to New Mexico residents. Plaintiffs' Verified Complaint at 5. People, or potential clients, that view the website maintained by the Dawsons may be from outside of New Mexico. Defendants also target people that are relocating to New Mexico. Finally, Plaintiffs claim that supplies and equipment used by them in their real estate practice were purchased outside of New Mexico and transported along the stream of interstate commerce. Plaintiffs' Verified Complaint at 5. Therefore, the Court finds that the membership agreements qualify as transactions involving interstate commerce in that the agreements provide rules and regulations for its member agents who conduct business in New Mexico and other states.

Plaintiffs entered into membership agreements with SWMLS and with the ABMR. In return for their membership fee, the Dawsons received privileges extended to members of each group. These privileges include access to compilations of house listings, lock box privileges, and a network of resources. By choosing to join SWMLS and AMBR, the Dawsons chose to abide by the Rules and Regulations of each organization. Because of the nature of the agreements, the Court finds that there was an agreement between the parties in writing providing for arbitration.

While Defendants claim that the language unequivocally indicates an agreement to arbitrate all matters, Plaintiffs argue that the language does not apply to the case at hand.[1] First, Plaintiffs

---

[1] The application for admission to SWMLS states that

the applicant agrees 'to abide by the Bylaws and Rules and Regulations of Southwest Multiple

-3-

argue that the dispute is not between themselves and other members of each organization, but between themselves and the organizations as a whole.[2] Second, Plaintiffs argue that the type of dispute being litigated is not within the parameters of the arbitration clauses. This Court disagrees.

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1985). However, although the parties' intent controls regarding whether they agreed to arbitrate a particular dispute, determining their intent is a question of law for the court to decide. *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793,797 (10th Cir.1995). The documents and exhibits submitted to the Court for both parties indicate an overwhelming utilization of alternative dispute resolution methods in the business of real estate. Plaintiffs are not new real

---

> Listing Service including the obligation to arbitrate any existing or future disputes with another Subscriber in good standing in accordance with the Service arbitration procedures.'

Section XV of the SWMLS Rules and Regulations provides that

> [e]ach Participant agrees to arbitrate disputes involving contractual issues, and specific non-contractual issues and questions with Service Participants in different firms arising out of their relationships as Service Participants . . .

Similarly, the AMBR application for membership provides that members

> agree to abide by the Code of Ethics of the NATIONAL ASSOCIATION OF REALTORS® including the obligation to arbitrate any existing or future dispute with another Member in accordance with the Board's arbitration procedures . . .

Article 17 of the Code of Ethic provides that

> in the event of contractual disputes or specific non-contractual disputes as defined in Standard of Practice 17-4 between REALTORS associated with different firms, arising out of their relationship as REALTORS, the REALTORS shall submit the dispute to arbitration in accordance with the regulations of their Board or Boards rather than litigate the matter.

[2] This argument cannot apply to the individually named defendants. The individually named defendants are members of SWMLS and AMBR. Thus, the language of the membership agreements and arbitration clauses clearly indicate that any dispute between the individually named defendants and the plaintiffs concerning the practice of real estate are covered by the arbitration clauses.

estate agents and therefore cannot claim ignorance of such practices. Upon submitting applications to the organizations in this case, Plaintiffs agreed to the terms of membership. Each application not only states that arbitration is required but directs Plaintiffs to additional references concerning arbitration.

The Tenth Circuit Court of Appeals has enunciated a policy favoring arbitration and acknowledging a federal mandate to construe arbitration clauses broadly. *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1546 (10th Cir. 1996) (citing *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 797 (10th Cir. 1995)). Thus, "[q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Coffey v. Dean Witter Reynolds, Inc.*, 891 F.2d 261, 262 (10th Cir. 1989) (citations omitted). The Court agrees that the arbitration clauses must not be so broadly read as to include suits between members that are merely tangential to the practice of real estate, such as an auto accident between two agents. However, in this case, the dispute is not a car wreck, but a direct consequence of their relationship to SWMLS and AMBR. In addition, while the language of the arbitration clauses appears to limit the application to disputes between members, SWMLS and AMBR are organizations made up entirely of members. Plaintiffs' dispute centers on their claim that SWMLS and AMBR are acting in violation of the Rules and Regulations, and therefore in violation of the membership agreements. For the foregoing reasons, the Court finds that Plaintiffs have failed to rebut the presumption of arbitrability and this case is subject to mandatory arbitration under the Federal Arbitration Act.

When presented with a suit which by agreement is subject to arbitration, enforcement of the arbitration clause is mandatory, and is not left to the discretion of the Court. *See Dean Witter*

*Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Section 3 of the FAA directs that a court, upon being satisfied that a matter before it is referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." Therefore, upon Defendants' motion, the Court will stay the proceedings.

Because this Court stays the proceedings pending arbitration, there is no need to rule on Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction. While under *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806 (3d Cir. 1989), a court may award injunctive relief if the existing status quo is causing one of the parties irreparable injury, Plaintiffs specifically argue to *maintain* the status quo in their Application. *See* Plaintiffs' Application for Temporary Restraining Order or Preliminary Injunction *(Doc. 15)* at 2. Furthermore, in the Tenth Circuit, courts have refused to allow such action unless it is specifically agreed to in the arbitration clause. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 727 (10th Cir. 1988).

Wherefore,

IT IS HEREBY ORDERED that Defendants' Motion To Dismiss or Stay Pending Arbitration is **granted.**

IT IS FURTHER ORDERED that Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction is **stayed** pending arbitration. The hearing scheduled for Thursday, September 30, 1999, at 9:30 a.m., is hereby **vacated**.

DATED this 29th day of September, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:

>   Joseph L. Werntz
>   Mark A. Glenn
>   Moses, Dunn, Farmer & Tuthill, P.C.
>   Albuquerque, New Mexico

Counsel for Defendants:

>   Patrick J. Rogers
>   Angelo J. Artuso
>   Modrall, Sperling, Roehl, Harris & Sisk, P.A.
>   Albuquerque, New Mexico